**Hill & Welch**
**1116 Heartfields Drive**
**Silver Spring, MD 20904**
**202-321-1448**
**welchlaw@earthlink.net**

January 30, 2025

Clifton Cislak, Clerk
United States Court of Appeals for the D.C Circuit
333 Constitution Ave., NW, Room 5205
Washington, DC 20001

Re: ORAL ARGUMENT HEARD November 18, 2024
Radio Communications Corp. v. FCC, No. 24-1004
Rule 28(j), Local Rule 28(f) Citation of Supplemental Authority

Dear Mr. Cislak:

RCC submitted its November 19, 2024 28(j) Letter [2085557] correcting the Commission's oral argument misstatement of the law that "there's really nothing in the statute that would indicate to the Commission that Congress had even considered the issue, let alone taken the very significant step of extending must-carry rights to Class A stations." Through 47 U.S.C. § 338(k)(5) "Congress plainly altered Class A status only for satellite must-carry without altering Class A status for cable TV must-carry."

On January 16, 2025 the Commission released FCC 25-9, Protecting the Nation's Communications Systems From Cybersecurity Threats. FCC 25-9 ¶ 16 seeks to protect the Nation's communications systems from cyber-attacks, including "all television stations." However, FCC 25-9 fn. 61, *see* attached text, misinforms the public that a copyright statute, 17 U.S.C. § 122(j)(3), requires that "low power television stations include Class A television licensees under the Commission's rules."

17 U.S.C. § 122(j)(3) is worded exactly the same as 47 U.S.C. § 338(k)(5) and it is expressly limited to the copyright "purpose[] of this paragraph" just as Section 338(k)(5) is expressly limited to the purpose of satellite must-carry. The Commission never amended 47 C.F.R. § 76.55(c)(1) to add primary Class A to the list of secondary TV classes

1

precluded from asserting must-carry on cable TV systems. RCC Main Brief at 5-8, 48-53; *compare* 47 U.S.C. § 534(h)(1)(B)(i) (cable TV must-carry) with 47 U.S.C. § 338(k)(5) (satellite must-carry). Because Congress determined that Class A stations are considered low power TV stations ONLY for satellite must-carry, but did not similarly limit cable TV must-carry, Class A stations can assert cable TV must-carry rights. *Rawat v. Commissioner*, 108 F.4th 891, 898 (CADC 2024) ("a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute.").

Respectfully submitted,

Timothy E. Welch

## Certificate of Compliance

      I certify that Petitioner's Rule 28(j), Local Rule 28(f) Citation of Supplemental Authority is proportionally spaced using 14 point Times New Roman typeface. I certify that this Response contains exactly 313 words as required by F.R.A.P. 28(j) (limiting 28(j) letters to 350 words) including headings, citation strings, footnotes, and quotations, but excluding the items listed in Rule 32(f). I relied upon my word processor, WordPerfect 2021 Version 21.0.0.194, to obtain the word count. I certify that the information on this form is true and correct to the best of my knowledge and belief.

/S/ _____
Timothy E. Welch
Counsel to Radio Communications Corp.

January 30, 2025

**Certificate of Digital Submission and Privacy Redactions**

      Petitioner's Rule 28(j), Local Rule 28(f) Citation of Supplemental Authority has been scanned for viruses with the most recent version of a commercial virus scanning program (Microsoft Defender Antivirus Version 1.421.1619.0, last updated January 30, 2025) and is free of viruses. In addition, I certify that all required privacy redactions have been made.

/S/ *Timothy E. Welch*
    Timothy E. Welch
    Counsel to Radio Communications Corp.

January 30, 2025

**Certificate Of Service**

      I hereby certify that pursuant to F.R.A.P. 25(d) and Circuit Rule 25(f) and 27(a) the Clerk of the Court will serve a copy of the foregoing Rule 28(j), Local Rule 28(f) Citation of Supplemental Authority using the CM/ECF System upon the following:

Adam Sorensen
Sarah E. Citrin
General Counsel's Office
Federal Communications Commission
445 12th Street, S.W.
Washington, D.C. 20554

Robert B. Nicholson
Alice A. Wang
Antitrust Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W., Room 3224
Washington, D.C. 20530

Courtesy service through undersigned counsel's email.

/S/_____
    Timothy E. Welch
    January 30, 2025

authentication are necessary for any sensitive computer system.[50] Furthermore, a failure to patch known vulnerabilities or to employ best practices that are known to be necessary in response to identified exploits would appear to fall short of fulfilling this statutory obligation.[51] Enterprise-level implementation of these basic cybersecurity hygiene practices is necessary to prevent unlawful real-time access to communications because vulnerabilities in ancillary systems, operational networks, or administrative infrastructure can provide attackers with unauthorized access that can ultimately compromise surveillance systems and other network elements. For example, even well-protected switches within an otherwise unsecured network would be vulnerable to compromise through the integration of infected systems in the supply chain or lateral movement by threat actors within the network. The integration of cybersecurity best practices across an enterprise makes it less likely that attackers can gain unauthorized access to networks from more common points of entry, such as corporate IT systems, customer-facing portals, and third-party vendors.

15. Having concluded that section 105 of CALEA requires telecommunications carriers to affirmatively secure their networks from unlawful access or interception of communications, we turn to the Commission's statutory duty to implement section 105 through rulemaking. Section 229 of the Communications Act of 1934, as amended (the Act), directs the Commission to "prescribe such rules as are necessary to implement the requirements of [CALEA],"[52] including "rules to implement section 105 of [CALEA] that require common carriers . . . to establish appropriate policies and procedures . . . to require appropriate authorization [for officers and employees] to activate interception of communications or access to call-identifying information" and "to prevent any such interception or access without such authorization."[53] Section 229 further directs that such rules implementing section 105 must require carriers "to maintain secure and accurate records of any interception or access with or without such authorization," and "to submit to the Commission the policies and procedures adopted to comply with the[se] requirements."[54] In light of this statutory language, we conclude that Congress has authorized the Commission to adopt rules that require telecommunications carriers to take specific steps to secure their networks against unauthorized interception.

## IV. NOTICE OF PROPOSED RULEMAKING

### A. Scope of Communications Service Providers Subject to Cybersecurity Proposals

16. The Declaratory Ruling above establishes that telecommunications carriers subject to CALEA have a statutory obligation and is effective immediately. In this *Notice of Proposed Rulemaking*, we propose to adopt specific cybersecurity and supply chain risk management requirements, and we propose to apply them to a broader universe of service providers. As discussed in this section, we

---

[50] *See* CISA, Cybersecurity Performance Goals (CPGs), https://www.cisa.gov/cybersecurity-performance-goals-cpgs (last visited Dec. 4, 2024); Center for Internet Security, Critical Security Controls Version 8.1, https://www.cisecurity.org/controls (last visited Dec. 4, 2024).

[51] *See, e.g.*, CISA, Enhanced Visibility and Hardening Guidance for Communications Infrastructure (Dec. 4, 2024), https://www.cisa.gov/resources-tools/resources/enhanced-visibility-and-hardening-guidance-communications-infrastructure.

[52] 47 U.S.C. § 229(a).

[53] 47 U.S.C. § 229(b)(1). Note that, although subsection (b)(1) refers to "common carriers," subsection (a) does not. The Commission has confirmed that "section 229(a) provides broad authority for the Commission to adopt rules to implement CALEA and, unlike section 229(b) does not limit our rulemaking authority to common carriers." *2006 Second Report and Order*, 21 FCC Rcd at 5389-90, para. 66.

[54] 47 U.S.C. § 229(b)(2)-(3).

propose that the requirements would apply to facilities-based fixed and mobile BIAS providers;[55] all broadcasting stations[56]—including AM broadcast stations,[57] FM broadcast stations[58] (including low power FM broadcast stations and program originating FM booster stations), digital audio broadcasters,[59] all television stations[60]—including low power television stations,[61] television broadcast translator stations,[62] and all analog television[63] and digital television service providers;[64] all cable systems[65] (including digital cable systems[66] and wireless cable systems);[67] wireline video systems;[68] wireline communications

---

[55] *See* 47 CFR § 8.1(b) (defining "broadband Internet access service" as "[a] mass-market retail service by wire or radio that provides the capability to transmit data to and receive data from all or substantially all internet endpoints, including any capabilities that are incidental to and enable the operation of the communications service, but excluding dial-up internet access service").

[56] *See* 47 CFR § 2.1 (defining broadcasting station as a station in the broadcasting service, which is a radiocommunication service in which the transmissions are intended for direct reception by the general public).

[57] 47 CFR § 73.14 (defining AM broadcast stations as "[a] broadcast station licensed for the dissemination of radio communications intended to be received by the public and operated on a channel in the AM broadcast band").

[58] 47 CFR § 73.310(a) (defining FM broadcast station as "[a] station employing frequency modulation in the FM broadcast band and licensed primarily for the transmission of radiotelephone emissions intended to be received by the general public").

[59] 47 CFR § 73.402 (defining digital audio broadcast as "those radio stations licensed by the Commission and use the In-band On-channel ("IBOC") system for broadcasting purposes").

[60] 17 U.S.C. § 122(j)(7) (defining television broadcast station to include "over-the-air, commercial or noncommercial television broadcast station licensed by" the Commission); *see* 47 CFR § 76.5(b).

[61] 47 CFR § 74.701(f) (defining low power TV station as "[a] station authorized [by the Commission's rules] that may retransmit the programs and signals of a TV broadcast station and that may originate programming in any amount greater than 30 seconds per hour"); 17 U.S.C. § 122(j)(3) (low power television stations include Class A television licensees under the Commission's rules); *see also* 47 CFR § 74.701(k).

[62] 47 CFR § 74.701(a) (defining television broadcast translator stations as "[a] station in the broadcast service operated for the purpose of retransmitting the programs and signals of a television broadcast station, without significantly altering any characteristic of the original signal other than its frequency and amplitude, for the purpose of providing television reception to the general public"); *see also id.* § 74.701(j).

[63] 47 U.S.C. § 153(56)(A) (defining analog television service as "television service provided pursuant to the transmission standards prescribed by the Commission"); *see* 47 CFR § 76.5(b).

[64] 47 U.S.C. § 153(56)(B) (defining digital television service as "television service provided pursuant to the transmission standards prescribed by the Commission"); *see* 47 CFR § 76.5(b).

[65] 47 CFR § 76.5(a) (defining a cable system as "[a] facility consisting of a set of closed transmission paths and associated signal generation, reception, and control equipment that is designed to provide cable service which includes video programming and which is provided to multiple subscribers within a community . . .").

[66] *See* 47 CFR § 11.11(a) (defining digital cable systems for the purposes of the EAS rules).

[67] 47 CFR § 11.11(c)(1) (defining wireless cable system for the purposes of the EAS rules as "a collection of channels in the [Broadband Radio Service] or [Educational Broadband Service] used to provide video programming services to subscribers").

[68] 47 CFR § 11.2(c) (defining wireline video systems as the "system of a wireline common carrier used to provide video programming service").