IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT


ORAL ARGUMENT HEARD NOVEMBER 18, 2024


RADIO COMMUNICATIONS CORPORATION,
                                      Petitioner

v.                                                             Case No. 24-1004

FEDERAL COMMUNICATIONS COMMISSION, et al.
                                      Respondents


PETITIONER'S MOTION TO WITHHOLD ISSUANCE
OF THE MANDATE

_____
_____


On Petition for Review of an Order from the
Federal Communications Commission (FCC 23-112)
Adopting Implementing Rules For The
Low Power Protection Act

_____
_____


Radio Communications Corporation
Timothy E. Welch, Esq.
Hill and Welch
1116 Heartfields Drive
Silver Spring, MD 20904
(202) 321-1448 (cell)
welchlaw@earthlink.net
July 14, 2025

Petitioner Radio Communications Corporation (RCC), pursuant to Fed. R. App. P. 27, 41(d) and D.C. Cir. Rule 41(a)(2), for good cause shown below, motions that the Court withhold issuance of the mandate in No. 24-1004 pending final order Supreme Court regarding the underlying litigation. In support whereof, the following is respectfully submitted:

**Request For Extension Of Protective Order**

The Court's March 12, 2024 Order, No. 24-1004 [2044486], at 2, provides that

> The one-year window in which to file a Class A license application has not yet opened, and the FCC represents that petitioner may seek permission to file a provisional application while this litigation remains pending.

The Low Power Protection Act ("LPPA") at issue in this case provided a one year period for Low Power TV licensees like RCC to file a Class A protection application. As discussed in the Court's March 12, 2024 Order, the Commission consented to RCC "fil[ing] a provisional application while this litigation remains pending." RCC timely filed its provisional Class A upgrade application prior to the May 30, 2025 statutory filing deadline. *See* Petitioner's February 19, 2025 Request For Judicial Notice [2101478] notifying the Court that RCC had timely filed a provisional Class A upgrade application (FCC LMS File No. 0000266875).

The Court issued its Judgment [2122581] and Opinion [2122582] in the captioned case No. 24-1004 on June 27, 2025. Pursuant to the Clerk's Order [2122583], issued the same date, the mandate in this case is being automatically withheld "until seven

1

days after disposition of any timely petition for rehearing or petition for rehearing en banc." The time to file for rehearing extends to 45 days after the June 27, 2025 entry of the Judgment. Fed. R. App. P. 41(b); D.C. Cir. Rule 41(a). Accordingly, the Court granted an automatic 52 day stay of the issuance of its mandate associated with its June 27, 2025 Judgment.

The time to file a petition for writ of certiorari is "within 90 days after entry of the [June 27, 2025] judgment." Sup. Ct. R. 13.1. Petitioner intends to seek Supreme Court review of the Court's June 27, 2025 Judgment via petition for certiorari which, in accordance with Supreme Court Rule 13.1, would be timely filed on or before the 38th day after the currently scheduled expiration of the automatic mandate issuance stay granted in the Court's June 27, 2025 Order [2122583].

Petitioner respectfully requests that the Court's March 12, 2024 protective order and the Court's June 27, 2025 automatic mandate issuance stay be extended to the 90th day after entry of the Court's June 27, 2025 Judgment to provide Petitioner an opportunity to seek Supreme Court review while maintaining the status quo regarding Petitioner's Provisional Class A upgrade application which is currently pending at the Commission under File No. 0000266875. Moreover, upon RCC's prompt notification to the Court that it has timely filed a cert petition with the Supreme Court, *see* D.C. Cir. Rule 41(a)(2), RCC requests that the March 12, 2024 protective order and the June 27, 2025 stay of mandate issuance be extended beyond the 90th day after the June 27, 2025 entry of

judgment in No. 24-1004 "while this litigation remains pending," extending through, and in accordance with, a final order issued by the Supreme Court regarding RCC's cert petition. *See* Fed. R. App. P. 41(d)(2)(B)(ii).

Absent extension of the March 12, 2024 protective order and withholding issuance of the mandate as requested herein, RCC's provisional Class A upgrade application would be subject to dismissal by the Commission. At best, dismissal of RCC's pending Class A upgrade application while RCC is seeking Supreme Court review would lead to wasteful agency reconsideration filings and further appellate review all of which can be avoided by grant of the instant request. At worst, were RCC to miss the Commission's issuance of a Public Notice and fail to file wasteful reconsideration litigation, RCC might be determined to have lost its right to file a Class A upgrade application given the lapse of the LPPA's one year filing period. RCC respectfully submits that the rationale which supported the Court's entry of the March 12, 2024 protective order remains extant. Moreover, because the Commission has previously consented to protection of RCC's statutory filing right pending the ongoing litigation, it does not appear that any prejudice would be caused by grant of the instant motion.

### Substantial Question And Good Cause For Stay

Pursuant to Fed. R. App. P. 41(d)(1) RCC respectfully submits that substantial questions and good cause exist in support continuation of the March 12, 2024 protective

order and continuation of the June 27, 2025 automatic stay of mandate issuance. The gist of the issues about which RCC intends to seek Supreme Court review are:

> 1. Whether the Low Power Protection Act, in compliance with Article III standing requirements, can be read as expanding "associational standing" to include the FCC's appellate advocacy supporting a lobbyist group's speculative and anti-competitive third-party injury claims and seeking nationwide Low Power TV upgrade license denials to protect anonymous third parties who are not even referenced in the LPPA, rather than defending its own expertise, where such claims would be barred on standing grounds were they litigated directly by those non-party third parties, rather than being advanced on appeal by the FCC on their behalf.
>
> 2. Whether the "best reading" of the LPPA requires nationwide Class A license denial based upon a trade association's speculative claim of injury to anonymous third parties, a licensing end Congress could have achieved by not enacting the LPPA in the first place and an end which does not substantially affect interstate commerce, where the lower court modified one of the LPPA's two "Designated Market Area" definitions in conflict with unanimous Supreme Court precedent holding that statutory definitions are "virtually conclusive" and where nullification of § 307(b)'s decades-old nationwide licensing mandate was inferred merely because the LPPA does not refer to § 307(b).

**Associational Standing**

As discussed in RCC's June 11, 2025 Rule 28(j) Letter [2120334], Judge Henderson's concurring opinion regarding associational standing in the Court's recent decision in *Voices v. FERC*, 139 F.4th 903 (CADC 2025), Nos. 24-1094, 24-1150, 2025 U.S. App. LEXIS 13875 (CADC June 6, 2025) argues persuasively that "rather than assert their own injuries, these groups rely on associational standing to assert the rights of others" a situation which "is discordant with the basic precepts of Article III—namely, that a party 'must assert his own legal rights' and 'cannot rest his claim

4

to relief on the legal rights of third parties.'" *Voices v. FERC*, 2025 U.S. App. LEXIS 13875 at 58-59 (Henderson concurring) (citations omitted). Judge Henderson was troubled that affidavits of parties claiming injury through the associations did not assert associational membership.

The Commission rejected RCC's beyond the scope of the rulemaking argument; NAB does not represent any LPTV licensee seeking LPPA protection. FCC 23-112 Apdx. 0008 n. 28; RCC Main Brief at 12. NAB lobbies for anonymous broadcasters. Apdx. at 00066 n.1. Armed with that scant evidentiary record, unsupported by affidavit or claim of reasonably certain injury, the Commission "decline[d] to read the LPPA as promoting maximum elevation of LPTV stations to primary status." Instead, the Commission adopted NAB's lobbying point that "elevating LPTV stations from secondary to primary Class A status comes at the cost of 'effectively block[ing] coverage and service improvements by full-service stations'" to justify implementation of its nationwide Class A license denial program. FCC 23-112 ¶ 38, Apdx. 00024-25 (directly quoting and adopting NAB's rulemaking Comments).

NAB is not injured by FCC 23-112, NAB's associational claim of injury is speculative and completely unsupported by affidavit. We don't even know who is behind NAB's claims. The Commission cannot stand in the NAB's shoes to represent the speculative, future injury claims NAB could not raise for anonymous broadcasters. *See* Petitioner's Unopposed 28(j) Letter [2106350], filed March 18, 2025, citing *FDA*

5

*v. All. for Hippocratic Med.*, 602 U.S. 367, 369 (2024) (holding that alleged "downstream economic injuries" do not support standing when those injuries are speculative and lack support in the record); *Voices v. FERC*, 2025 U.S. App. LEXIS 13875 at 58-59 (Henderson concurring).

## Statutory Definitions Are "Virtually Conclusive"

While the Court's Opinion, *Slip Op.* at 11, recites the requirement that statutory definitions are "virtually conclusive," the Opinion nevertheless alters each of the LPPA's Section 2(a)(2) definitions for "Designated Market Area" ("DMA") in violation of that requirement. First, the Opinion appends the "95,000 TV household" standard found in LPPA Section 2(c)(2)(B)(iii) to the "large markets" DMA definition found at Section 2(a)(2)(A) in violation of the requirement that statutory definitions cannot be altered.

Second, at page 2 of the *Slip Opinion* the Court inexplicably deletes the "local markets" text from Section 2(a)(2)(B)'s "local markets" DMA definition. That missing text is the root of RCC's statutory argument. Accordingly, the Court's Opinion twice altered the LPPA's DMA definitions in upholding the Commission's appellate representation of NAB's lobbying effort. Moreover, the Opinion unevenly applied the manner of statutory interpretation the Court used to decide this case: the Opinion failed to append the 95,000 TV household standard to the "local markets" DMA definition found at Section 2(a)(2)(B), the DMA definition upon which RCC relied. With all due respect, RCC's statutory interpretation is not "convoluted," *Slip Op.* at 10, RCC's

6

statutory makes perfect sense when critical definitional text is not deleted and when the LPPA's two DMA definitions are interpreted in the same manner.[1]

It is respectfully submitted that good cause exists to grant the instant request to withhold issuance of the mandate in No. 24-1004 as discussed herein.

Respectfully submitted,

July 14, 2025  /S/ _Timothy E. Welch_____
Timothy E. Welch, Esq.
Attorney for Petitioner
Hill and Welch
1116 Heartfields Drive
Silver Spring, MD 20904
welchlaw@earthlink.net
(202) 321-1448

---

[1] *Slip Op.* at 3-4 states that Section 307(b) communities of license are not "equivalent systems to DMAs," but completely ignores RCC's argument that Section 307(b) "communities of license" are nationwide "local markets" and equivalent to the Nielsen's larger DMA areas because both definitions represent nationwide areas. LPPA Section 2(b)(2)(B) expressly authorizes the FCC to use Section 307(b) communities of license as "local markets" and to use Nielsen's "DMA" trademark as part of a Class A "local markets" licensing program. *See e.g.* RCC's Main Brief at 34-35.

## Certificate of Compliance

      I certify that this Petitioner's Motion To Withhold Issuance Of The Mandate is proportionally spaced using 14 point Times New Roman typeface and, in compliance with the 5,200 word limit found at Circuit Rule 27(d)(2)(A), contains 1,715 words, excluding those items listed at F.R.A.P. 32(f) and Circuit Rule 32(e)(1), as counted by WordPerfect 2021 Ver. 21.0.0.194. I certify that the information on this form is true and correct to the best of my knowledge and belief.

/S/ _____
    Timothy E. Welch
    Counsel to Radio Communications Corporation

July 14, 2025

**Certificate of Digital Submission and Privacy Redactions**

  Petitioner's Motion To Withhold Issuance Of The Mandate was scanned for viruses with the most recent version of a commercial virus scanning program (McAfee Antivirus Build 1.31.114, content version2200.0 last updated July 13, 2025) and is free of viruses. In addition, I certify that all required privacy redactions have been made.

/S/ _Timothy E. Welch_
Timothy E. Welch
Counsel to Radio Communications Corporation

July 14, 2025

# Certificate Of Service

      I hereby certify that pursuant to F.R.A.P. 25(d) and Circuit Rule 25(f) and 27(a) the Clerk of the Court will serve a copy of the foregoing Petitioner's Motion To Withhold Issuance Of The Mandate by email using the CM/ECF System upon the following:

*Adam Sorensen
Sarah E. Citrin
General Counsel's Office
Federal Communications Commission
445 12th Street, S.W.
Washington, D.C. 20554

*Robert B. Nicholson
Alice A. Wang
Antitrust Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W., Room 3224
Washington, DC 20530-0001


*Courtesy service by undersigned counsel's email.


/S/_____
    Timothy E. Welch
    July 14, 2025